UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICHARD WILLIAMS,                       )     Case No. 3:12CV2768
                                        )
              Petitioner,               )     JUDGE JEFFREY J. HELMICK
                                        )
       v.                               )     Magistrate Judge George J. Limbert
                                        )
NEIL TURNER, Warden,                    )
NORTH CENTRAL CORRECTIONAL              )
INSTITUTION,                            )
                                        )
              Respondent.               )     **REPORT AND RECOMMENDATION**
                                        )     **OF MAGISTRATE JUDGE**
                                        )

       Petitioner Richard Williams ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations that occurred during his Lucas County, Ohio Court of Common Pleas convictions for domestic violence under Ohio Revised Code ("ORC") § 2919.25(A) and (D)(4).  *Id.*  On June 3, 2013, Respondent Neil Turner, Warden of the North Central Correctional Institution in Marion, Ohio ("Respondent") filed a return of writ.  ECF Dkt. #11.  On July 5, 2013, Petitioner filed a traverse.  ECF Dkt. #13.

       For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

## I.     SYNOPSIS OF THE FACTS

       The Sixth District Court of Appeals of Ohio set forth the relevant facts on direct appeal. ECF Dkt. #11-1 at 139-144. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> The relevant facts concerning this appeal are as follows.  Appellant was indicted on six felony counts in four separate indictments: 1) December 31, 2008, charging one count of domestic violence, 2) June 2, 2009, charging two counts of domestic violence, 3) June 5, 2009, charging one count of intimidation of a witness, and 4) August 17, 2009, charging one count of aggravated burglary and one count of domestic violence.  A community control violation was also alleged in a prior

domestic violence conviction.  These counts all involved the same victim, S.J., the mother of appellant's child.  Appellant entered not guilty pleas to the counts.

The state filed a notice of intent to use evidence of appellant's prior domestic violence convictions in order to prove an element of the felony domestic violence counts.  On September 21, 2009, the state also filed a notice of intent to use evidence of other acts of domestic violence under Evid. R. 404(B).  The state argued that prior acts of domestic violence are admissible at trial to show a defendant's intent.  In opposition, appellant filed a motion in limine arguing that the intent in a domestic violence case is "self-evident" and that admission of such evidence would be unduly prejudicial.

On November 25, 2009, the trial court, in a written decision, denied appellant's motion in limine.  The court noted that in domestic violence cases, prior acts of domestic violence against the same victim may be admissible to prove the defendant's intent.

The cases proceeded to trial on December 7, 2009.  The victim testified that she and appellant have a child together.  As to the prior domestic violence incidents, the victim testified that appellant first became abusive toward her in 2007.  The victim testified about an incident on September 29, 2007, where appellant twisted her arm; and in December 2007, where he threw her down a flight of stairs while she was pregnant.  The victim also discussed some 2008 incidents.

As to the charges in the indictment, the victim testified that on December 30, 2008, appellant had her car (that appellant had purchased for her.)  In the late evening, she and two friends, Annette C. and Corie H., walked to the neighborhood carry-out, the Rainbow Market, to meet appellant and get her car.  According to the victim, she and appellant were in between two houses when he grabbed her by the neck and hit her head against the side of the house.  Appellant[1] testified that she had a lump on her head.

Annette C. and Corie H. Also offered testimony as to this incident.  Annette C. testified that she had a "falling out" with the victim and that they were no longer friends.  Regarding the December 30, 2008 incident, Annette said that appellant and the victim were both grabbing at the car keys.  The next day, Annette accompanied the victim to the courthouse to meet with Toledo Police Detective Jaggers.  Annette stated that she went along with what the victim told police even though it was a lie.  Eventually, Annette invoked her Fifth Amendment privilege.

Corie H. testified that on December 30, 2008, appellant and the victim were "scuffling" over the keys and that the victim asked for help to get appellant off of her.  Corie stated that she did not see appellant strike the victim.

Toledo Police Officer David O'Brien responded to the victim's call.  The victim indicated that appellant choked and punched her.  Witness Annette C. corroborated her story.  Toledo Police Detective Mary Jo Jaggers testified that on December 31, 2008, she met with the victim.  Jaggers stated that she felt a "knot" on the victim's head.

---

[1]  The undersigned believes that the appellate court meant that the victim and not Appellant testified that she had a lump on her head as Petitioner did not testify at his trial.

As to the March 1, 2009 incident, the victim testified that she was upstairs at her home watching television with the door closed when appellant, who somehow gained access without a key, kicked her bedroom door open, smashed her fan against the wall, and stated that the victim was going to appellant's home. The victim stated that he shoved her down the stairs; she ran out the front door. According to the victim, Annette C., who lived across the courtyard, saw the commotion and began pulling the victim into her home. Appellant tried to grab both ladies but they made it into Annette's home. They called the police.

Annette C. testified that she and the victim planned the lies they were going to tell the police. Responding Toledo Police Officer John Noonan testified that he interviewed the victim and Annette. The victim indicated that she had a temporary protection order against appellant and that he attacked her. Noonan saw no signs of forced entry at the victim's home.

The next alleged incident occurred on May 6, 2009, while the victim was living with a friend. On that date, appellant pulled up in the victim's car; the victim testified that she requested the car keys. According to the victim, appellant then began yelling at her and ordered her to get in the car. The victim saw police nearby and ran to them. Appellant left the area.

According to the victim, appellant called her a few hours later requesting his apartment key that was on the ring with the car keys. The victim agreed to meet him at the Save-A-Lot parking lot. The victim stated that when she handed him the key, he twisted her arm and bit her thumb. Appellant then walked with the victim to his friend's house and got her a towel because her hand was bleeding.

Once the victim was back at her temporary residence she called the police. Toledo Police Officer Julio Ramirez responded to the call. Officer Ramirez testified that the victim was very upset and that she had a "nasty" bite on her right hand. Officer Ramirez photographed the wound the victim went to the hospital for treatment. The photographs and the medical records were admitted into evidence.

Regarding the alleged May 8, 2009 incident, the victim testified that appellant arrived at the house where she was staying and began arguing with her. The victim stated that appellant tried to grab her and take her with him but that she kicked him and was able to get away. The victim then called the police. Toledo Police Officer Julio Ramirez responded to the call, completed some paperwork, and spoke with a detective.

The final alleged incident testified to by the victim occurred on June 2, 2009, at Toledo Municipal Court. The victim testified that appellant made a gesture that she perceived indicated that he would kill her.

The victim's friend, Heather H., who was with her in court that day, could not recall seeing appellant make a gun gesture to his head. Toledo Police Detective Michael Skotynsky testified that on the date of the alleged incident he was assigned as the court liaison at Toledo Municipal Court. The victim's advocate alerted him to the alleged incident in the hallway and he observed the victim shaking and being held by Heather. The victim told him that appellant made a gun gesture to his head.

Following the state's case, the parties stipulated to two prior domestic violence convictions which occurred in 2002. Appellant was also granted his Crim. R. 29 motion as to the intimidation of a witness charge.

-3-

Appellant then presented the testimony of Lisa S. who observed the victim on May 6, 2009, and heard her state that she cut her finger with a knife. Appellant also presented the testimony of Toledo Police Detective Robert Furr who stated on January 20, 2009, appellant flagged him down and his partner to tell them that his girlfriend had just called in a domestic violence charge. The officers and appellant were located some distance from where the alleged incident took place. The officers then proceeded to the victim's home where she stated the victim[2] just left. Officer Furr then informed her that appellant could not have perpetrated the offense; she admitted that she was angry and wanted to get him into trouble.

Following deliberations, the jury found appellant not guilty of the December 30, 2008 incident. As to the March 1, 2009 incident, the jury found appellant guilty of domestic violence and not guilty of aggravated burglary. The jury found appellant guilty of the May 6, 2009 incident and not guilty of the May 8, 2009 incident.

ECF Dkt. #11-1 at 138-144.

## II.   PROCEDURAL HISTORY

### A.   State Trial Court

In its May 2009 term, the Lucas County Grand Jury indicted Petitioner on two counts of domestic violence in violation of ORC § 2919.25(A)(1) and (D)(4). ECF Dkt. #11-1 at 6-7. In a separate indictment, the Grand Jury also indicted Petitioner on intimidation of a crime victim witness in violation of ORC § 2921.04(B). *Id.* at 10. In yet another indictment, the May 2009 Term of the Grand Jury indicted Petitioner on aggravated burglary in violation of ORC § 2911.11(A)(1) and one count of domestic violence in violation of ORC § 2919.25(A) and (D)(4). *Id.* at 13-14. On August 26, 2009, the trial court granted the State's motion to join all of Petitioner's cases[3]. *Id.* at 15.

On September 21, 2009, the State filed a notice of its intent to use evidence of Petitioner's other acts of domestic violence at trial pursuant to Rule 404(B) of the Ohio Rules of Evidence. ECF Dkt. #11-1 at 18. The State explained that it intended to use other incidents of domestic violence perpetrated by Petitioner against the victim, Shamis Jones,in order to show proof of motive, intent, absence of mistake or conduct and a common scheme as violent acts allegedly occur after Petitioner has been drinking or is intoxicated. *Id.* at 18-20. Counsel for Respondent filed a motion in limine

---

[2] The undersigned believes that the Ohio appellate court made a clerical error and that this should state "that appellant just left."

[3]As pointed out by Respondent, the trial court also joined a fourth case, but only as to a violation of Petitioner's community control sanction as he had already been convicted of domestic violence emanating from this fourth case and had been sentenced to four years of community control. ECF Dkt. #11 at 5, fn. 2; ECF Dkt. #11-1 at 15-16.

contra to the State's notice of intent to use other acts evidence.  *Id*. at 22.  The State filed a responsive motion.  *Id*. at 29.

On October 22, 2009, the State filed another notice of intent to use evidence, this time, evidence of testimony of Deputy Sheriff Tom Ross of the Lucas County Prosecutor's Office concerning statements that witness Annette Cardell made during a taped interview on September 16, 2009 in which she stated that on March 1, 2009, she heard an altercation between Petitioner and Shamis Jones outside and she went outside to help Ms. Jones, put herself between Ms. Jones and Petitioner, and allowed Ms. Jones to come into her apartment.  ECF Dkt. #11-1 at 37.  Ms. Cardell also stated that Petitioner then attempted to gain entry into her apartment and caused damage to her door.  *Id*. at 37-38.  The State explained that Petitioner's counts before the court were for aggravated burglary and domestic violence, as well as three other case numbers, all of which concerned Ms. Jones as the victim.  *Id*. at 38.  The State also indicated that it had evidence of a taped telephone conversation from the jail where Petitioner instructed Ms. Cardell not to cooperate with the prosecution in any manner.  *Id.*  The State noted that it anticipated that Ms. Cardell would not appear for trial as she already failed to appear under subpoena.  *Id*.  The State explained that if Ms. Cardell did not appear for trial, it intended to introduce the statements that she made to the police officer about her observations of domestic violence that occurred on March 1, 2009.  *Id.*  Counsel for Respondent filed a motion in limine contra to the State's notice of intent to use evidence.  *Id*. at 41.

On November 5, 2009, counsel for Petitioner filed a motion to sever his cases, arguing that the jury may cumulate evidence of the various crimes and find him guilty when they may not otherwise do so if they had to separately consider the evidence in each of his cases.  ECF Dkt. #11-1 at 45-46.  The State filed a response to the motion to sever and Petitioner's counsel filed a reply brief.  *Id*. at 49-60.

On November 24, 2009, the trial court denied Petitioner's first motion in limine concerning the State's notice of intent to use other acts of domestic violence against Ms. Jones by Petitioner.  ECF Dkt. #11-1 at 61-65.  The trial court granted Petitioner's second motion in limine and ordered that the State refrain from making reference to recorded statements of Ms. Cardell at trial unless permitted by the court.  *Id*. at 68-69.  The court indicated that it would consider the State's renewed

motion to use such statements if Ms. Cardell did not cooperate at trial. *Id.* at 69.  The trial court also denied Petitioner's motion to sever his cases.  *Id.*  at 70-71.

Petitioner's cases proceeded to trial and on December 15, 2009, the trial court granted Petitioner's motion for acquittal in the case charging him with the intimidation of a crime victim or witness.  ECF Dkt. #11-1 at 72.  On December 18, 2009, the jury found Petitioner guilty of one count of domestic violence in one case, but not guilty of the other domestic violence count in that case, and guilty of domestic violence in another case, but not guilty of aggravated burglary in that case.  *Id.* at 73-75.  Accordingly, Petitioner was found guilty of two counts of domestic violence. *Id*.

On January 14, 2010, the trial court sentenced Petitioner to three years of prison for the domestic violence conviction in one case and ordered that it be served consecutively to the two-year prison sentence on the domestic violence conviction in the other case, to be served consecutively to a one year term for violating community control in his prior case.  ECF Dkt. #11-1 at 75-80. Petitioner was sentenced to an aggregate term of six years in prison.  *Id.* at 80.

## B.  Direct Appeal

On January 26, 2010, Petitioner filed a timely notice of appeal for each of his cases to the Ohio Court of Appeals for the Sixth District.  ECF Dkt. #11-1 at 81-86.  On February 11, 2010, the Sixth District Court of Appeals consolidated the appeals into one case.  *Id*. at 87.  In his appellate brief filed by new counsel, Petitioner asserted the following assignments of error:

> I.   THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTOR TO REPEATEDLY INTRODUCE TESTIMONY RELATIVE TO EVIDENCE PROHIBITED UNDER OHIO RULE OF EVIDENCE 404(B).
>
> II.  THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN THAT HE WAS IRREPARABLY HARMED BY THE ADMISSION OF IRRELEVANT TESTIMONY; HEARSAY TESTIMONY; HIGHLY PREJUDICIAL AND IMPERMISSIBLE 404(B) TESTIMONY.
>
> III. THE DEFENDANT-APPELLANT'S CONVICTIONS ARE SUPPORTED BY INSUFFICIENT EVIDENCE AND ARE THEREFORE A DENIAL OF DUE PROCESS.
>
> IV.  THE DEFENDANT-APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

-6-

ECF Dkt. #11-1 at 89-113.  The State filed a brief in response.  ECF Dkt. #11-1 at 114.

On June 3, 2011, the Sixth District Court of Appeals issued an opinion affirming the trial court's judgment.  ECF Dkt. #11-1 at 138-154.

**C**.  **Supreme Court of Ohio**

On July 26, 2011, Petitioner, pro se, filed a notice of appeal and motion for leave to file a delayed appeal in the Supreme Court of Ohio.  ECF Dkt. #11-1 at 155-175.  On September 21, 2011, the Ohio Supreme Court granted Petitioner's motion for leave.  *Id*. at 176.  On October 19, 2011, Petitioner, pro se, filed a memorandum in support of jurisdiction asserting the following:

PROPOSITIONS OF LAW

I.  THE TRIAL COURT ERRED BY ALLOWING THE PROSECUTOR TO REPEATEDLY INTRODUCE TESTIMONY RELATIVE TO EVIDENCE PROHIBITED UNDER OHIO RULE OF EVIDENCE 404(B)[.]

II.  THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN THAT HE WAS IRREPARABLY HARMED BY THE ADMISSION OF IRRELEVANT TESTIMONY; HEARSAY TESTIMONY; HIGHLY PREJUDICIAL AND IMPERMISSIBLE 404(B) TESTIMONY.

III.  THE DEFENDANT-APPELLANT'S CONVICTIONS ARE SUPPORTED BY INSUFFICIENT EVIDENCE AND ARE THEREFORE A DENIAL OF DUE PROCESS.

IV.  THE DEFENDANT-APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

V.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

ECF Dkt. #11-1 at 177-209.  The State filed a memorandum in opposition.  *Id*. at 211-227.

On December 21, 2011, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  ECF Dkt. #11-1 at 228.

**III.**  **28 U.S.C. § 2254 PETITION**

On October 29, 2012, Petitioner pro se executed the instant petition for a writ of federal habeas corpus, which was filed on November 6, 2012.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

GROUND ONE:

Ineffective assistance of trial counsel

Ineffective assistance of appellate counsel

Supporting Facts:

Trial counsel repeatedly allowed impermissible testimony to be introduced at trial. Counsel also failed to vigorously cross examine the alleged victim. Ms. Jones made statement at trial which completely contradicted statements in her police reports yet counsel neglected to question her on these inconsistencies. Counsel also failed to admit into evidence exhibits favorable to the defendant: police reports refuting accuser's testimony, police report in which accuser was caught trying to put false charges on defendant, and letter from accuser written to the court more than a year earlier in which she admits to putting false charges on the defendant in order to punish him for the crime of making her mad. Appellate counsel failed to bring up issue of my speedy trial rights which I raised several times before trial but could not get adequately addressed by counsel or trial judge.

GROUND TWO:

Introduction of inadmissable[sic] testimony per Ohio rule of evidence 404(B)

Supporting Facts:

The trial court allowed numerous alleged bad acts of the defendant to be relayed to the jury by the alleged victim. Many of these alleged incidents occurred prior to December 2008 which is the earliest incident for which the defendant was on trial. This testimony-unchallenged by defense counsel-served to poison the jury, allowing them to decide that the defendant was a bad guy even before hearing any evidence whatsoever on the crimes for which he was on trial. State witnesses also repeatedly referenced defendant's prior criminal record even though this was stipulated to prior to trial commencing.

GROUND THREE:

Convictions are supported by insufficient evidence and are therefore a violation of Due Process.

Supporting Facts:

The only evidence presented at trial that anything whatsoever happened was the testimony of the alleged victim. None of the State's eyewitnesses corroborated her stories and one even recanted and admitted she and the alleged victim made up the entire affair before calling police. Also it was shown that on at least 2 seperate [sic] occasions the alleged victim made false claims against the defendant in order to get him in trouble. A letter written to the court more than a year earlier by the alleged victim has her admitting to filing false charges in order to hurt the defendant. (CR-2008-04016) Though available this letter or the police report citing the alleged victim for doing such as she admitted were not submitted as evidence.

GROUND FOUR:

Convictions are against the manifest weight of the evidence

> Supporting Facts:
>
> There is no evidence supporting the defendant's convictions. The alleged victim's testimony is, in essence, the only "evidence" supporting the state's case. Her credibility is compromised time after time again by her admission to filing false charges and her contradictions between her trial testimony with that of her statements on the police reports. The state's own witnesses failed to support her claims with 2 going so far as to call her a "liar" and one admitting to being complicit with her in order to file false charges against defendant. In CR2009-2571 defendant was convicted even though major elements of the alleged victim's story were found to be inaccurate or outright false.

*Id*. On June 3, 2013, Respondent filed a return of writ. ECF Dkt. #11. On July 5, 2013, Petitioner filed a traverse. ECF Dkt. #13.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th

Cir. 2000). Further, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

## C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on

independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

    (1)    whether the petitioner failed to comply with an applicable state procedural rule;

    (2)    whether the state courts actually enforced the state procedural sanction;

    (3)    whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

    (4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal

claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986). A petitioner can also show that a fundamental miscarriage of justice will occur if the Court does not address his procedurally defaulted ground for relief. *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). The Supreme Court described the fundamental miscarriage of justice exception as follows:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Id.*

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the Court's review of Petitioner's claims.

## V.   STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)   resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law,
>
> as
>
> > determined by the Supreme Court of the United States; or
>
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court

-13-

> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A.    Decisions of lower federal courts may not be considered.
>
> B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C.    The state court decision may be overturned only if:
>
>> 1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;
>>
>> 2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or
>>
>> 3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or
>>
>> 4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'
>
> D.    Throughout this analysis the federal court may not merely apply its

-14-

own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.    ANALYSIS

### A.    First Ground for Relief

In his first ground for relief, Petitioner asserts that his trial counsel was ineffective because counsel allowed impermissible testimony to be introduced at trial, failed to vigorously cross-examine the victim, and failed to admit into evidence exhibits favorable to his defense.  ECF Dkt. #1 at 5.  He

-15-

also asserts that his appellate counsel was ineffective in failing to raise the issue of his speedy trial rights. *Id.* Respondent points out that Petitioner has procedurally defaulted all claims but one in this ground for relief because although he raised the ineffectiveness of trial counsel on direct appeal, he raised only the claim relating to allowing impermissible testimony and did not raise the other issues that he raises in the instant ground for relief. ECF Dkt. #11 at 11-12.

A review of Petitioner's direct appeal leads the undersigned to recommend that the Court find that Petitioner has procedurally defaulted all but one of the claims asserted in this ground for relief. In his direct appeal, Petitioner, through counsel, alleged the ineffectiveness of trial counsel in his second assignment of error. ECF Dkt. #11-1 at 92, 104-107. Petitioner alleged that trial counsel was ineffective in failing to object to repeated instances of impermissible Rule 404(B) information, one of the same claims that he asserts before this Court. *Id.* at 103-104. However, Petitioner's other allegations of trial counsel's ineffectiveness in his direct appeal concerned a failure to object to improper references to Petitioner's prior criminal record and a failure to object to numerous instances of hearsay testimony from police witnesses. *Id.* at 104-107.

Under Ohio law, res judicata bars review of claims that a petitioner fails to raise on direct appeal when those claims appear on the face of the record. *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004). The facts surrounding Petitioner's assertions of the ineffectiveness of trial counsel in failing to object to improper references to his criminal record and instances of hearsay testimony were on the face of the record and therefore they are procedurally defaulted since Petitioner failed to raise them on direct appeal. Moreover, even if Petitioner's allegations concerning the failure of trial counsel to admit exhibits into evidence were matters occurring outside of the record, Petitioner was required to raise such claims in a post-conviction relief motion in the Ohio courts. Ohio Rev. Code § 2953.21, *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005), citing *State v. Gibson*, 69 Ohio App.2d. 91, 430 N.E.2d 954, 957 (1980). Petitioner did raise the issue of trial counsel's ineffectiveness in failing to admit favorable exhibits into evidence for the first time before the Supreme Court of Ohio, but he did so in the context of an ineffective assistance of *appellate* counsel claim. ECF Dkt. #11-1 at 189. Even if Petitioner's state appellate counsel claim could be construed

-16-

as an ineffective assistance of trial counsel claim, the undersigned recommends that the Court find that it is procedurally defaulted because the Supreme Court of Ohio will not review a claim appearing on the face of the record that was not first presented to the Ohio Court of Appeals. *Fornash v. Marshall*, 686 F.2d 1179, 1185 n.7 (6th Cir. 1982); *Leroy v. Marshall,* 757 F.2d 94, 99 (6th Cir. 1985), citing *State v. Phillips*, 27 Ohio St.2d 294, 272 N.E.2d 347, 56 O.O.2d 114 (1971).

Accordingly, the undersigned recommends that the Court find that Petitioner has procedurally defaulted that part of his first ground for relief in which he asserts the ineffective assistance of trial counsel based upon counsel's failure to vigorously cross-examine the alleged victim and failure to admit exhibits into evidence that were favorable to him, such as police reports refuting the victim's testimony and showing that victim made false charges in the past.

Further, the undersigned recommends that the Court find that Petitioner has failed to exhaust and has procedurally defaulted his claim of the ineffectiveness of appellate counsel. The Sixth Circuit Court of Appeals has held that the exhaustion requirement for an ineffective assistance of appellate counsel claim is not satisfied for federal habeas corpus purposes when a petitioner files a discretionary appeal of claim to the Ohio Supreme Court but not a Rule 26(B) application before the Ohio appellate court. *Goldberg v. Maloney,* 692 F.3d 534 (6th Cir. 2012). The Court held that "raising a claim of ineffective assistance of appellate counsel in a discretionary appeal to the Ohio Supreme Court, without (also) addressing the claim through Ohio Appellate Rule 26(B), does not satisfy the exhaustion requirements unless the Ohio Supreme Court addresses the issue on the merits." *Id*. at 538. In making such a holding, the *Goldberg* Court reviewed the Ohio Supreme Court's decision in *Ohio v. Davis*, 119 Ohio St.3d 422, 894 N.E.2d 1221 (2008). In *Davis*, the defendant had filed an appeal to the Ohio Supreme Court and a Rule 26(B) application in the Ohio appellate court asserting the ineffective assistance of appellate counsel. The Ohio Supreme Court declined to accept the discretionary appeal and the appellate court thereafter applied *res judicata* and refused to address the merits of the Rule 26(B) application because of the Ohio Supreme Court's declination of jurisdiction. The Ohio Supreme Court disagreed with the Ohio appellate court's

-17-

decision, explaining that when it "determines whether or not to accept jurisdiction in a particular case, it is not rendering a decision on the merits." *Id.* at 1225.  The Ohio Supreme Court further explained that an appellate court must determine in a timely Rule 26(B) application whether a genuine issue exists as to whether the applicant was deprived of the effective assistance of counsel on appeal. *Id.* at 1224.  The *Davis* Court reasoned that while a defendant may raise the ineffective assistance of counsel issue both on direct appeal to the Ohio Supreme Court and in a timely Rule 26(B) application, the Ohio Supreme Court's denial of the discretionary appeal does not exhaust the issue because the appellate court must  nevertheless address the merits of the application.  *Id.*  "In other words, raising a claim for ineffective assistance of appellate counsel in a discretionary appeal to the Ohio Supreme Court, without addressing the claim through Ohio Appellate Rule 26(B), does not satisfy the exhaustion requirement unless the Ohio Supreme Court addresses the issue on the merits."  *Goldberg*, 692 F3d at 538.

Petitioner in the instant case raised the ineffective assistance of appellate counsel as a proposition of law in his memorandum in support of jurisdiction before the Supreme Court of Ohio. ECF Dkt. #11-1 at 188-189.  He did not file a Rule 26(B) application on the issue.  Thus, the claim is unexhausted.  Further, the claim is procedurally defaulted because under Rule 26(B), Petitioner had 90 days from the Ohio appellate court's decision in which to raise a claim of the ineffective assistance of appellate counsel.  Ohio App. R. 26(B).  Petitioner did not do so and cannot assert that he was unaware of the claim since it raised it before the Supreme Court of Ohio.  Where "an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review."  *Goldberg*, 692 F.3d at 538 n.3.

For these reasons, the undersigned recommends that the Court find that Petitioner has procedurally defaulted his ineffective assistance of appellate counsel claim advanced in his first ground for relief.  The undersigned further recommends that to the extent that Petitioner relies upon the ineffectiveness of appellate counsel as cause to excuse any of his other procedurally defaulted claims, the Court find that the ineffectiveness of appellate counsel claim cannot serve as such cause because that claim itself is procedurally defaulted.  An ineffective assistance of appellate counsel

claim can serve as cause to excuse a procedural default only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted. *Beuke v. Houk*, 537 F.3d 618, 631 (6th Cir. 2008).

In summary, the undersigned recommends that the Court find that procedural default bars Petitioner's claims in his first ground for relief that trial counsel was ineffective in failing to vigorously cross-examine the alleged victim and failing to admit exhibits into evidence that were favorable to him.  The undersigned also recommends that the Court find that Petitioner has also procedurally defaulted the ineffective assistance of appellate counsel claim that he advanced in his first ground for relief.  To the extent that he advances the ineffective assistance of appellate counsel as cause to excuse his procedural default of any of the ineffective assistance of counsel claims, the undersigned further recommends that the Court find that he cannot do so because the ineffective assistance of appellate counsel claim has itself been procedurally defaulted.  Petitioner presents no other cause for failing to raise these claims in the state courts and presents no miscarriage of justice or claim of actual innocence.

Finally, the undersigned recommends that the Court consider as set forth *infra* Petitioner's only surviving first ground for relief claim; that is, his assertion of the ineffective assistance of trial counsel in failing to object to impermissible testimony introduced at trial.  Petitioner raised this claim as part of his second assignment of error in his direct appeal.  ECF Dkt. #11-1 at 104-105.  Accordingly, the undersigned recommends that the Court consider this part of Petitioner's first ground for relief in conjunction with the analysis in the Second Ground for Relief.

### B.     Second Ground for Relief

In his second ground for relief, Petitioner alleges that the trial court erred in allowing the State to introduce testimony and other evidence of his prior bad acts and his criminal history.  ECF Dkt. #1 at 7.  Respondent asserts that procedural default bars this Court's review of this ground for relief because Petitioner failed to contemporaneously object to said evidence at trial and Ohio law prohibits the review of a claim not contemporaneously objected to during trial.  ECF Dkt. #11 at 12-14.

The undersigned first notes that Petitioner does not present this ground for relief as a federal

-19-

constitutional violation.  Rather, he presents the ground for relief as a violation of state law under Rule 404(B) of the Ohio Rules of Evidence.  ECF Dkt. #1 at 7.  Petitioner presented this claim in the same manner before the Ohio appellate court and the Supreme Court of Ohio.  ECF Dkt. #11-1 at 101-103; ECF Dkt. #11-1 at 183.  The Ohio appellate court addressed this claim as a state law claim. Thus, this Court could decline to address this ground for relief as noncognizable since it is not the province of a federal habeas court to reexamine state court determinations on state law matters, which includes rulings regarding the admission or exclusion of evidence.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *accord Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)( "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." (internal quotation marks omitted)).  "The Supreme Court has defined very narrowly the category of infractions that violates fundamental fairness." *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir.2007) (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)) (internal quotation marks omitted).

The Court could also decline to review this ground for relief based upon procedural default. Ohio employs a contemporaneous-objection rule, under which "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *Shafer v. Wilson*, No. 07-3284, 364 Fed. Appx. 940, 2010 U.S. App. LEXIS 2452, 2010 WL 395914 at *5 (6th Cir. Feb. 4, 2010) unreported, quoting *State v.1981Dodge Ram Van*, 36 Ohio St. 3d 168, 522 N.E.2d 524, 526 (Ohio 1988).

In the instant case, the Ohio appellate court noted that while Petitioner filed a motion in limine concerning the impermissible bad acts evidence, he did not object at trial to the admission of the testimony.  ECF Dkt. #11-1 at 145.  The appellate court thereafter relied upon the contemporaneous objection rule and conducted a plain error analysis.  *Id.*  The Sixth Circuit has held that "Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice." *Hinkle v. Randle*, 271 F.3d

-20-

239, 244 (6ᵗʰ Cir. 2001).  The Court has further held that a state appellate court's review under plain error analysis is not equivalent to a review on the merits. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006).

Thus, the Court could find that Petitioner's second ground for relief before this Court is procedurally defaulted because of his failure to contemporaneously object at trial to the admission of impermissible bad acts.  However, Respondent notes that Petitioner alleged in his first ground for relief that trial counsel was ineffective in failing to object at trial to the bad acts evidence which could arguably be considered as cause to excuse the failure to object to the second ground for relief at trial.  ECF Dkt. #11 at 14.

Even if the Court would consider the instant ground for relief concerning the trial court's rulings, Petitioner cannot demonstrate that the state court rulings are contrary to Supreme Court precedent because there is no Supreme Court precedent which holds that a state violates due process by admitting other "bad acts" evidence. *Bugh*, 329 F.3d at 513 ("While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.").  Thus, the undersigned recommends that even if the Court finds that Petitioner's second ground for relief survives noncognizability and procedural default, it is not contrary to Supreme Court precedent under the AEDPA.

However, this leaves remaining a fundamental fairness review and the consideration of Petitioner's first ground for relief concerning the ineffectiveness of trial counsel in failing to object to the Rule 404(B) bad acts evidence.  As to the ineffectiveness of trial counsel, the Ohio appellate court held:

> In appellant's first assignment of error, he argues that the trial court erred by allowing evidence prohibited under Evid. R. 404(B).  Specifically, appellant argues that the victim's testimony which recalled alleged abuse in 2007 and 2008, predating the counts in the indictment, was prejudicial.
>
> We first note that appellant did not object to the admission of the testimony.  The

-21-

failure to object to such alleged errors waives all but plain error. *State v. Watson*, 3d Dist. No. 14-09-01, 2009-Ohio-6713, ¶ 41, citing State v. Johnson (1999), 134 Ohio App.3d 586, 590. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, paragraph three of the syllabus; *State v. Witcher*, 6th Dist. No. L-06-1039, 2007-Ohio-3960, ¶ 32.

Further, the evidence at issue was the subject of appellant's motion in limine. A trial court's ruling on a motion in limine is a ruling to exclude or admit evidence; thus, our standard of review on appeal is whether the trial court committed an abuse of discretion that amounted to prejudicial error. *State v. Graham* (1979), 58 Ohio St.2d 350. An abuse of discretion is demonstrated where the trial court's attitude in reaching its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St. 3d 217, 219.

Evidence of other acts which are wholly independent of the crime charged is generally

admissible. *State v. Thompson* (1981), 66 Ohio St.2d 496, 497. In that vein, Evid. R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Accordingly, evidence of other crimes committed by the accused either before or after the crime charged is inadmissible to show a propensity to commit crimes, but may be relevant and admissible to show motive or intent, the absence of mistake or accident, or a scheme, plan or system in committing the act in question. *State v. Broom* (1988), 40 Ohio St.3d 277, paragraph one of the syllabus. Evidence of an accused's other acts is thus admissible only when it "tends to show" one of the material elements in the charged offense and only when it is relevant to the proof of the accused's guilt for such offense. *State v. Curry* (1975), 43 Ohio St.2d 66, 68-69. See R.C. 2945.59.

As to the admission of other acts of domestic violence, the Ninth Appellate District has held that prior acts against the same victim are admissible in a domestic violence prosecution to prove the defendant's intent. *State v. Blonski* (1997), 125 Ohio App.3d 103, 113. In order to be admissible, the current act and the other acts "must have occurred reasonably near to each other and a similar scheme, plan, or system must have been utilized to commit the offense at issue and the other offenses." Id., citing *State v. Elliott* (1993), 91 Ohio App.3d 763, 771.

In the present case, at trial the state elicited testimony from the victim about the following incidents. First, the victim testified that the first abusive incident occurred in 2007 when appellant did not like her clothing choice; he grabbed her arm and made her change. Next, the victim stated that in September 2007, appellant held a gun to her head and twisted her arm. The victim stated in December 2007, appellant threw her down a flight of stairs when she was five months pregnant.

The victim testified that after their child was born she and appellant argued and

-22-

appellant grabbed her.  The victim stated that when their child was a few weeks old, appellant threw the victim down the stairs while she was holding the baby.  The recounting of these events consisted of roughly three pages of trial transcript.

The trial court preliminarily allowed admission of the above testimony based upon its conclusion that it helped to establish the appellant's intent.  We cannot say that the trial court abused its discretion in so finding; we further cannot find plain error in its admission.  The incidents occurred within two years of the events at issue and involved the same parties.  Further, contrary to appellant's contention, there is no evidence that appellant was prejudiced by the admission of the testimony.  The jury found appellant not guilty as to three of the five counts before it - two of which were domestic violence charges.  Thus, the events did not "poison" the jury to decide his guilt prior to hearing the testimony.

Based on the foregoing, we find that the court did not err in allowing testimony regarding the prior incidents.  Appellant's first assignment of error is not well-taken.

ECF Dkt. #11-1 at 144-147.  Thus, even if Petitioner presented a cognizable claim that the evidentiary rulings were erroneous, he fails to show that the admission of this evidence rendered his trial fundamentally unfair.  As pointed out by the appellate court, the jury acquitted Petitioner on three of the five counts.  Further, the undersigned notes that the prosecution did not mention the prior incidents in her closing argument and the trial court issued cautionary instructions to the jury that they could not use the evidence of prior incidents to prove Petitioner's character or that he acted in conformity therewith.  ECF Dkt. #12-5 at 4-22, 43.  The trial court also informed the jury that Petitioner had stipulated to two prior domestic violence convictions and the evidence of the prior convictions was received only because having it was an element of one of the offenses for which Petitioner was charged.  *Id*. at 43.

Petitioner makes assertions concerning the victim's testimony and her credibility in this ground for relief.  However, his counsel cross-examined the victim and asked her about prior false charges and police reports that she made against Petitioner, one for which she was charged and convicted of filing a false police report and misuse of the 911 system.  ECF Dkt. #12-3 at 116.  Counsel also cross-examined the victim about her continuous contacts with Petitioner after her reports of his continuing abuse and her fear of him.  *Id*. at 81-113.  Counsel also brought to light the fact that the victim and Petitioner continued to share a car and car keys after most of the incidents.

-23-

*Id*. at 81-82, 97-99.  She also questioned the victim about the incident where he bit her thumb, as she admitted that she followed Petitioner to a friend's house and she waited while Petitioner went into that house and brought her out a towel for her hand.  *Id*. at 102-105, 107.  Counsel further cross-examined the victim about a Father's Day card that she wrote after the instant charges were filed.  ECF Dkt. #12-3 at 111-116.

As to the ineffective assistance of counsel claim, the Ohio appellate court first set forth the proper ineffective assistance of counsel standard under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  ECF Dkt. #11-1 at 147-150.  The court thereafter held:

> To prevail on a claim of ineffective assistance of counsel, a defendant must prove two elements: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, (1984), 466 U.S. 668, 687.  Proof of prejudice requires a showing "that there is a reasonably probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. Further, debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel.  *State v. Phillips* (1995), 74 Ohio St.3d 72, 85.
>
> As to appellant's claim that counsel was ineffective in failing to object to the "other acts" evidence under Evid. R. 404(B), we have already addressed the admissibility of such testimony; thus, appellant's counsel was not ineffective in failing to object to its admission.  The references to appellant's criminal record included the fact that there was a temporary protection order in place.  In addition, multiple police witnesses referenced appellant's prior convictions as dictating the course of the investigation.  The state of the court quickly halted the offending testimony.  Trial counsel's failure to object could reasonably be seen as a tactical attempt to minimize the impact of the prior convictions.  Further, the jury learned of the stipulated convictions prior to commencing their deliberations.

ECF Dkt. #11-1 at 148-149.  Thus, the appellate court held that because it had found that the trial court did not err in admitting the other acts testimony, Petitioner's counsel was not deficient in failing to object to its admission.  The Ohio appellate court further held that trial counsel was not deficient in failing to object to testimony concerning Petitioner's prior convictions as she could have been attempting to minimize the impact of those convictions by not drawing attention to them with an objection.  *Id*. at 149.  The court also explained that the jury was informed of the prior convictions

-24-

before they began deliberating anyway, which lessened any argument concerning the prejudicial nature of any testimony related thereto. *Id.*

Based upon the Ohio appellate court's assertions, and the fact that trial counsel filed a motion in limine concerning the admission of prior bad acts which was denied, the undersigned recommends that the Court find that the Ohio appellate court did not act contrary to or unreasonably apply *Strickland v. Washington* in determining that Petitioner's ineffective assistance of counsel claim had no merit.

In order to establish the ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient, and that such performance prejudiced the defense, i.e., that counsel's errors were so serious as to deprive petitioner of a fair trial. See, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Judicial scrutiny of a counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689.

Because of the difficulties in assessing counsel's performance, a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, supra. This is a high burden to meet:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

-25-

circumstances, the challenged action might be considered sound trial
strategy.

*Id.* at 689, 104 S.Ct. 2052 (citation and internal quotation marks omitted).

"The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S.Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009). Pursuant to §2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 131 S.Ct. at 788.

As explained above, the trial court denied defense counsel's pretrial motion in limine concerning the other acts that the victim testified to at trial. ECF Dkt. #11-1 at 63-65. The Ohio appellate court reasoned that it may have been defense counsel's strategy not to object to the victim's testimony concerning these incidents at trial. Reviewing defense counsel's cross-examination of the victim, she focused on the charges for which Petitioner was on trial and the fact that the victim consistently continued to contact Petitioner after incidents in which she alleged that she feared him. Counsel asked the victim about these prior false charges and police reports and her conviction for filing a false police report and misuse of the 911 system. ECF Dkt. #12-3 at 116. Counsel asked about the victim's continuous contacts with Petitioner after alleged incidents and her reported fear of him. *Id*. at 81-113. Counsel questioned the victim about her continuing to share a car and car keys with Petitioner after most of the abuse incidents. *Id*. at 81-82, 97-116. The undersigned recommends that the Court find that the Ohio appellate court's determination that defense counsel was using sound trial strategy is not contrary to or an unreasonable determination of the facts in light

of the evidence presented.

Moreover, even if Petitioner could present an issue that his trial counsel deficiently performed by failing to object to the Rule 404(B) other acts evidence presented at trial, he cannot meet the prejudice prong of *Strickland*.   As more fully explained below in the next ground for relief, Petitioner fails to show that but for this error of trial counsel, the results of the trial would have been different.  The evidence as outlined in the next ground for relief below shows that even without the prior bad acts testified to by the victim, the jury could have found beyond a reasonable doubt that Petitioner was guilty of the two counts of domestic violence for which he was convicted.

### C.    **Third Ground for Relief**

In this ground for relief, Petitioner asserts that his constitutional rights to due process were violated because insufficient evidence supported his convictions.  ECF Dkt. #1 at 8.

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).   In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000), *quoting Jackson,* 443 U.S. at 319.  When reviewing the sufficiency of the evidence, a habeas court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for the jury. *See United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995).  Moreover, the inquiry is not whether the trier of fact made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict.  *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 506 U.S. 390, 401-02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  In determining whether the state court's determination was objectively unreasonable, the Court must first determine whether the evidence was sufficient to convict under *Jackson*.  *See Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010).  If sufficient

evidence exists with which to convict, the inquiry ends. *Id.* If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.,* quoting *Tucker v. Palmer,* 615 F.3d 631, citing *Jackson*, 443 U.S. at 319. This is the "double layer" of deference due a state court determination about the sufficiency of the evidence. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). A District Court is not permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact. *Brown v. Davi*s, 752 F.2d 1142, 1147 (6th Cir. 1985), and *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir. 1983).

The Ohio appellate court in this case cited to *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), the Supreme Court of Ohio case citing *Jackson*, in determining the proper standard of review for a sufficiency of the evidence claim. ECF Dkt. #11-1 at 151. The appellate court set forth the requirements for a domestic violence conviction under sections 2919.25(A) and (D)(4) of the Ohio Revised Code, applied the *Jackson* standard, reviewed the evidence, and concluded that any rational juror could have found from the victim's testimony, the testimony of Officer Noonan, the photographic evidence, and hospital records, that the state proved all of the elements of the two counts of domestic violence under Ohio law beyond a reasonable doubt. *Id*. at 151-153.

The appellate court also addressed Petitioner's main assertion that the evidence was insufficient because it was based solely on the testimony of the victim, which was not corroborated by anyone else, and discredited by the fact that she had made prior false claims against Petitioner and wrote a letter indicating that she admitted filing false charges in order to hurt Petitioner. ECF Dkt. #1 at 8. The Ohio appellate court found that determining the credibility of the victim was a matter left to the jury and nothing in the record suggested that the jury lost its way or created a manifest miscarriage of justice. *Id*. at 152-153.

Ohio Revised Code section 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Ohio Rev. Code § 2919.25(A).

-28-

Ohio Revised Code section 2919.25(D)(4) provides in relevant part the degree of crime that the current domestic violence conviction becomes if the offender had prior similar offenses such that "[i]f the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or household member at the time of the violations or offenses, a violation of division (A) or (B) of this section is a felony of the third degree..." Ohio Rev. Code § 2919.25(D)(4).

In finding that sufficient evidence was presented to warrant the domestic violence convictions, the Ohio appellate court first noted that following the state's case, the parties stipulated to two prior domestic violence convictions that occurred in 2002. ECF Dkt. #11-1 at 143. A number of domestic violence situations were testified to at trial, including the two charges for which Petitioner was convicted in this case which occurred on March 1, 2009 and May 6, 2009. The Ohio appellate court cited to the victim's testimony that on March 1, 2009, Petitioner grabbed her and threw her down the steps, after which she ran to her neighbor's house. *Id.* at 152-153. The court also cited to testimony that Petitioner tried to grab both Petitioner and her neighbor but they broke free and called the police. *Id.* at 153. The court cited to the testimony of Officer Noonan, who interviewed the victim and the neighbor and a former friend named Annette. *Id.* As to the May 6, 2009 incident, the Ohio appellate court cited to testimony from the victim indicating that Petitioner grabbed her and bit her hand and to photographs of the bite and hospital records that were admitted into evidence. *Id.* The court noted the responding officer's testimony, who stated that the victim was very upset. *Id.* As to Petitioner's assertions that the victim's testimony was not corroborated and she was charged with falsifying a police report, the court noted that the jury was tasked with determining credibility and did so in the state's favor. *Id.*

A review of the trial transcript shows that the victim testified that on March 1, 2009, she was laying down watching television upstairs in the two-story apartment where she was staying. ECF Dkt. #12-3 at 52. The victim stated that she did not invite Petitioner to the apartment that night and he did not have the key that she had given him to the apartment that night. *Id*. at 57. Petitioner, who

-29-

appeared very intoxicated, kicked open the door to the room where she was lying down, grabbed her phone, and threw a fan across the room. *Id.* at 53, 57. She related that Petitioner said that she was going to his house and yanked her out of bed, shoved her down the stairs, and as he headed toward the kitchen, she opened the door and ran out of the house and he came up behind her and pushed her so that she fell to the ground. *Id.* at 53-54. The victim testified that Annette was standing in her doorway with the screen door open to her apartment and when Petitioner's phone rang and he answered it, she ran into Annette's house. *Id.* at 54. She stated that Petitioner was grabbing her and Annette was grabbing her at the same to get her into her apartment when Petitioner began grabbing Annette too. *Id.* She and Annette went upstairs and Petitioner began banging on Annette's door so Annette called the police, who arrived and spoke to both women. *Id.*

The victim thereafter testified as to the May 6, 2009 incident. ECF Dkt. #12-3 at 58. She testified that she was living with a friend at that time because she left Petitioner due to their domestic problems. *Id.* The victim stated that Petitioner pulled up to the place where she was staying in the car that he bought for her and she asked for the car keys and they started arguing about the keys. *Id.* at 59. She testified that she saw the police down the street while they were arguing and Petitioner yelled at her repeatedly to get into the car or he would kill her. *Id.* at 59-60. She stated that the car would not start up and she ran to the police who were finishing up a case and one of the officers said that when he was done, he would go back with her and check everything out. *Id.* at 60. When she walked back to the house with the officer, Petitioner was gone, so the victim filed a police report. *Id.* at 61. The victim testified that a couple hours later, Petitioner called her and asked for the car keys back because the key ring had his apartment key on it and it was cold outside. *Id.* She stated that she felt bad for him so she met him at a grocery store and when she handed him the key, he twisted her arm back and bit the side of her thumb. *Id.* at 61-62. She related that she picked up a bottle and threw it at him. *Id.* at 62. When asked what happened next, the victim stated that "[w]e - - he walked to Shake and them house and was sitting on their porch and he went in and grabbed me a towel." *Id.* at 63-64. "Shake" is the street name for a friend of theirs and Petitioner went to get a towel for the victim because her hand was bleeding. *Id.* at 64-65. The victim and Petitioner then

-30-

began yelling at each other again and she saw her friend come by, who told her to file a police report. *Id.* at 64. So she called the police and they came out with medical help. *Id.* at 64-65. She then went to the hospital for medical treatment. *Id.* at 67-68.

The State thereafter moved to admit the 911 tapes, the hospital records and the emergency medical services report. ECF Dkt. #12-3 at 65. Photographs of the victim's thumb were also presented to the jury. *Id.* at 66.

The prosecutor also raised a prior incident involving the victim and Petitioner on January 21, 2009 whereby the victim testified that she called the police on the day and told them that she and Petitioner had gotten into a fight and he hit her and threw the pillows off of the couch. ECF Dkt. #12-3 at 75. The victim testified that the incident that she reported to the police that day was false and she did that because Petitioner told her to do it so that he would look good in court. Id. at 75-76. She indicated that Petitioner wrote down what she should say and she did it because she feared him. *Id.* at 77. She explained that she was convicted of filing a false police report and completed community service and paid a fine. *Id.* at 78. The victim then indicated that she was not lying during her testimony and was not lying on December 30, 2008, March 1, 2009, May 6, 2009, May 8, 2009, or June 2, 2009 when she filed other police reports against Petitioner. *Id.* at 79.

On cross-examination, among other issues, defense counsel questioned the victim about a letter dated June 21, 2009, Father's Day, after all of the police reports and charges, in which she wrote that Petitioner "has his coming" and "I would hate to be you in the end." ECF Dkt. #12-3 at 115. The victim explained that she was mad and wanted Petitioner to suffer for what he had done to her. *Id.* She indicated that she did not know if Petitioner and Annette were dating and her references to Annette and Petitioner in the letter were about them being the best of friends. *Id.* at 116. The victim also explained that every time that she was supposed to testify against him on charges, he would give her money or other items like a washer or dryer, a car, or take her out to eat. *Id.* at 119.

Annette also testified. ECF Dkt. #12-3 at 148. She indicated that she was once good friends with the victim. *Id.* at 149. She testified that she remembered talking to Detective Jaggers of the

Toledo Police Department about an incident occurring on December 30, 2008 between Petitioner and the victim but she lied to Detective Jaggers and just went by whatever the victim was saying because they were friends. *Id*. at 157. She called the victim a habitual liar. *Id*. at 158. The prosecution was granted permission to treat Annette as a hostile witness after she testified that on March 1, 2009, nothing unusual happened between the victim and Petitioner as they crossed the field together and she ended up going to Annette's apartment and Petitioner went to the apartment of his nephew next door to Annette. *Id*. at 158-159. Annette related that it was not her but the victim who called the police from Annette's phone on March 1, 2009 after the victim came to her house and they planned everything that they were going to tell the police and file a false police report against Petitioner. *Id*. at 159-161. A conference was held in the court's chambers whereby Annette was informed of her Fifth Amendment rights and she was thereafter appointed counsel. *Id.* at 163-165. After discussions with her counsel, Annette invoked her Fifth Amendment privilege and was excused as a witness. *Id.* at 171.

Officer Surgo of the Toledo Police Department testified. ECF Dkt. #12-4 at 6. She indicated that on May 6, 2009, she was on street patrol on a felony warrant service in another case when the victim in this case came running across the street crying and screaming that she needed help. *Id.* at 7. Officer Surgo testified that the female told her that her child's father was threatening to kill her and she needed help. *Id.* at 8-10. The victim told Officer Surgo that the person who threatened her was her child's father, Petitioner. *Id*. at 10-11. Petitioner was not at the scene and Officer Surgo recalled hearing fighting across the street when she was serving the warrant. *Id.* at 11-12.

Officer Noonan of the Toledo Police Department also testified. ECF Dkt. #12-4 at 14. He recalled being dispatched on March 1, 2009 after a female caller reported that a male was banging on the front door trying to get in. *Id*. at 16. He arrived at the scene and was met by the victim and Annette and when he spoke to the victim, she reported that Petitioner was an ex-boyfriend or father of her child and she had a protection order against him but he attacked her as she left her apartment across the courtyard. *Id.* at 18. He testified that the victim escaped from Petitioner with the help of Annette and they ran into Annette's apartment and locked the door. *Id.*

Officer Ramirez of the Toledo Police Department testified as well. ECF Dkt. #12-4 at 27. He testified that he received a dispatch call on May 6, 2009 for a domestic violence and when he arrived on the scene, the victim met him at the door, was very upset and said she wanted to make a police report. *Id*. at 28. He indicated that the victim was holding up her right hand which had a very nasty bite on it. *Id*. His partner took photographs of the victim's right thumb with the bite and emergency medical services was dispatched for medical care as well. *Id*. at 29-30. Officer Ramirez reported that they received information about Petitioner from the victim and advised her to go to the hospital. *Id*. He indicated that he was called back to the same house for a domestic violence offense two days later, when the victim came to the door and told him that Petitioner had returned, grabbed her by the arm and told her that she was going with him. *Id*. at 30-31. Officer Ramirez indicated that the victim told him that she kicked Petitioner, was able to get free, closed the door and called 911. *Id*. at 31. Petitioner was not there when Officer Ramirez arrived. *Id*.

Detective Jaggers of the Toledo Police Department also testified. ECF Dkt. #12-4 at 50. She identified her extensive experience with domestic violence cases and her certification in teaching domestic violence classes, as well as her involvement with shelters for women who have violence in their lives. *Id*. at 51-52. Detective Jaggers testified that it was not unusual for victims of domestic violence to drop the charges against the abusers and return to their abusers. *Id*. at 52.

Based upon the evidence presented and considered in the light most favorable to the prosecution, the undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of United States Supreme Court precedent or the facts of record as any rational trier of fact could have found the essential elements of the domestic violence charges proven beyond a reasonable doubt.

### D. Ground for Relief Number 4

In this ground for relief, Petitioner asserts that his convictions are against the manifest weight of the evidence. ECF Dkt. #1 at 10. For the following reasons, the undersigned recommends that the Court decline review of this ground for relief.

-33-

A claim that a conviction is against the manifest weight of the evidence is not cognizable in federal habeas corpus review. *Kyle v. Gansheimer*, No. 2013 WL 6330900, at *24 (N.D. Ohio Dec. 4, 2013). It is not cognizable before this Court because "[a] 'manifest weight of evidence' claim which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only." *Ladd v. Tibbals,* No. 5:11-cv-173, 2012 WL 5364242, at *7 (N.D. Ohio, Sept. 11, 2012), unpublished, Report and Recommendation adopted by 2012 WL 5364406 (N.D. Ohio, Oct. 30, 2012), citing *Brown v. Moore*, No. 1:06-CV-413, 2008 WL 4239160, at *8 (S.D.Ohio Sept. 10, 2008), unpublished (citing 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1998)), Manifest weight claims are derived from purely state law whereby the state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). Accordingly, the Court should dismiss this Petitioner's fourth ground for relief because it lacks cognizability.

**VII**.  **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE:  May 27, 2014                              _/s/ George J. Limbert_____
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).